PAGE (SHEFFIELD v.). See Case No. 12,-743.

PAGE (SPAULDING v.). See Case No. 13,-219.

PAGE (STEARNS v.). See Case No. 13,339.

PAGE (THOMAS v.). See Cases Nos. 13,906 and 13,907.

---

## Case No. 10,668.

### PAGE v. TRUTCH.

[22 Int. Rev. Rec. 281; 5 Am. Law Rec. 155; 3 N. Y. Wkly. Dig. 167; 3 Cent. Law J. 559; 8 Chi. Leg. News, 385; 1 Cin. Law Bul. 224; 24 Pittsb. Leg. J. 11.]

Circuit Court, D. Oregon. July 31, 1876.

LIABILITY OF ATTORNEY FOR NOT GIVING A CORRECT CERTIFICATE OF TITLE.

1. An attorney who is employed by the lender to examine the title of property offered as a security for a contemplated loan by the borrower, is responsible to the lender for the correctness of his opinion, although the expense of the examination is paid by the borrower.

2. If the attorney certifies that the security is a good one, he thereby warrants that the title shall not only be found good at the end of a contested litigation, but that it is free from any palpable, grave doubt, or serious question of its validity.

3. An attorney who conducts a suit to foreclose a mortgage taken upon his certificate that the title was good, is not entitled to extra compensation because of labor and time consumed in such suit, in contesting the validity of such mortgage, upon a question within the scope of his certificate.

4. Whatever extra labor or time is bestowed in conducting the suit on account of such question being raised, is bestowed for the benefit of the attorney himself in maintaining his certificate, and he is only entitled to charge his client as for an uncontested case.

[This was an action of debt by W. W. Page against Joseph W. Trutch, to recover a fixed sum for professional services.]

G. W. Yocum and Hugh T. Bingham, for plaintiff.

John Catlin, for defendant.

DEADY, District Judge. This action is brought to recover the sum of $1,800 gold coin, with interest from April 20, 1876, for professional services rendered by the plaintiff to the defendant between November, 1874, and said date, in conducting a suit to foreclose a mortgage upon the north half of block 8 in the city of Portland. The answer of the defendant admits the services, but

denies that they are worth more than $500 in coin, and alleges that the plaintiff, in the conduct of said suit, received sundry sums of money from the defendant for which he has failed to account; and also that the loan for which said mortgage was given as security was made upon the certificate of the plaintiff acting as attorney for defendant to the effect that the property was "a good and valid security" for such loan, but that in fact there was a grave question as to the validity of said mortgage, and that the same was "a perilous and doubtful one," whereby the defendant was put to great costs, trouble and delay in collecting his money, and suffered great loss on account of the uncertainty of the title to said property, and the consequent depreciation in its market value. The reply admits the receipt of $86.50 in currency for the plaintiff on defendant's account, but denies that plaintiff was employed by defendant to examine the validity of the mortgage, and that the security was doubtful or perilous. In pursuance of the stipulation of the parties, the cause was heard by the court on July 21st, without the intervention of a jury.

From the evidence the facts of the case appear to be as follows: In December, 1873, Mr. Edwin Russell, then manager of the Bank of British Columbia, in this city, and the agent of the defendant, then and now a resident of Victoria, V. I., loaned to D. D. Bunnell, guardian of the five minor children of Emsley R. Scott, deceased, the sum of $12,000 in gold coin, at 1 per centum per month interest, and took as security therefor a mortgage executed by said Bunnell, as guardian aforesaid, upon the north half of block 8 in the city of Portland, the same being the property of said minor children. That said Bunnell, before executing said mortgage procured the order of the county court of Multnomah county, authorizing him, as guardian aforesaid, so to do; that said Russell, before making said loan and accepting said security, employed the plaintiff to examine the title to said property and the authority of said Bunnell to execute said mortgage, and that said plaintiff, in pursuance of said employment, gave said Russell a certificate to the effect that the title to said property was in said minor children, and said Bunnell was duly authorized to make the loan and execute the mortgage as security therefor; and that said money was borrowed for the purpose of improving said property by building a market house thereon, which was done. That afterwards in November, 1874, the interest being in arrears upon said mortgage, the plaintiff was employed by said Russell, acting as the agent of the defendant, to foreclose the same; that in pursuance of said employment he brought suit in the circuit court for the county aforesaid, where there was a decree dismissing the same upon the ground that the mortgage was invalid for want of power in the county court to license the guardian to mortgage his wards' property; that thereupon said plaintiff took an appeal to the supreme court of the state, which court upon consideration of the cause, gave a decree foreclosing said mortgage and directing a sale of the premises for the amount due thereon; and that afterwards in the spring of 1876, the plaintiff caused said property to be offered at sale upon an execution to satisfy said decree, at which sale there being no bidders, the defendant by his agent, Mr. Lloyd Brooke, bid in the same at $15,500, that being substantially the amount then due thereon. That the defendant has only received in satisfaction of the decree in said suit of Trutch v. Bunnell,[1] the property aforesaid, and that assuming the title to be good, it is not now and was not at the time of said sale worth more than $12,000 in gold coin. That it was worth to foreclose said mortgage, provided there had been no material objection to the validity of the same, not more than 5 per centum of the amount recovered, but there being good cause to question the validity of the same for the alleged want of power in the county court to authorize the guardian to execute the same, and the suit to foreclose being contested by the guardian ad litem on that ground, it was worth not more than $1,000. That the plaintiff, while acting as attorney for the defendant in said foreclosure suit, received from the clerk of said circuit court, out of the moneys paid to said clerk by the defendant as costs and expenses of said suit, the sum of $160 in currency, for which he has not accounted to the defendant.

On the argument, several questions of law and fact were discussed by counsel. The plaintiff insisted that in making the examination of the title of the mortgaged premises he was not acting as the attorney for the defendant, but for Bunnell. But upon the evidence it is clear that the facts and law are to the contrary. In his own testimony, the plaintiff, while he states that Russell was not to pay him for the examination and that Bunnell was, also admits that Russell would not make the loan except upon his certificate that the title was good and that the county court had power to authorize the loan, and that he gave him such a certificate; while Mr. Russell testifies explicitly that he employed the plaintiff, who was then attorney for the bank, to make the examination, and that upon his certificate he made the loan, but that it was understood that Bunnell was to pay all the expenses of the examination of the title, as it was the custom for the borrower to do. Add to this the frequent declarations of the plaintiff to the agent of the defendant, when doubts were expressed as to the success of the foreclosure suit, that he was responsible for the validity of the mortgage and would pay the defendant himself if he failed to make it out of the mortgaged premises, and there-

[1] [5 Oregon, 504.]

can be no doubt but that he was acting as the attorney of the defendant in making the examination of the title, and is responsible to him accordingly. The fact that the borrower, Bunnell, was to pay the expense of the examination does not affect the question a particle. If the plaintiff agreed to look to him for the compensation for his services, that did not make him any the less the defendant's attorney.

Practically, it is admitted that the compensation claimed by the plaintiff is an extraordinary fee, and his right to recover it is placed upon the ground of the serious character of the litigation involved in the foreclosure suit and the extra time, labor and risk incurred by him in conducting it. In reply to this it is argued for the defendant that as the loan was made by him on the plaintiff's certificate that the security was good, and he being responsible for that opinion, if any serious question arose in the course of the litigation concerning the validity of the mortgage, just so far the correctness of the certificate was impugned or brought into question, and whatever extra labor, time or risk the plaintiff incurred on this account, was in fact incurred for himself, and therefore the defendant ought not to be required to compensate him for it. The certificate is not to be considered a warranty against every frivolous and speculative question which the dishonesty of the debtor or the ingenuity of counsel may interpose against the enforcement of the security, but I think it ought to be held as a warranty or representation, not only that the mortgage would be found or held to be valid at the end of a protracted and expensive litigation, but that there was no palpable, grave doubt, or serious question concerning its validity.

Ordinarily, when a party loans money upon the certificate of an attorney that the title to the proposed security is good, he does not expect that in the enforcement of such security he may encounter a question which gives the debtor or other persons interested in the property a reasonable ground to contest his claim and put him to the risk and expense of a contested litigation. Upon this branch of the case my conclusion is, that the defendant having taken the security in question upon the opinion of the plaintiff that it was valid, whatever extra labor or risk the latter incurred in enforcing it on account of its alleged invalidity, was incurred in contemplation of law and good morals for himself and not the defendant, and therefore he is only entitled to compensation as for an uncontested suit to foreclose.

In disposing of this question I have not considered it necessary or proper to express an opinion upon the validity of the mortgage. Most of the gentlemen of the bar who were examined as witnesses in the case, expressed the opinion that it was invalid, and leaving out of consideration the effect of the certificate, fixed the compensation of the plaintiff proportionately high—one of them, Judge Strong, even going so far as to say that he ought to have 25 per centum of the value recovered; upon the principle, I suppose, that he considered the debt in such extreme peril that the attorney who recovered it, ought to be considered as a salvor and allowed salvage. But even supposing the plaintiff had not given the certificate, and that he is entitled to compensation accordingly, he could not recover the fee claimed. Whatever risk there might be in the litigation, there could not be any extraordinary labor or time attending it. There were no witnesses to examine or evidence to sift and marshal. The contest, so far as there was one, turned upon a single narrow question of statute law, upon which the arguments on either side are apparent and limited. The opinion of Mr. Justice Shattuck, before whom the case was heard in the court below, was that $1,000 was a reasonable compensation for the services, and such was the opinion of other leading attorneys at this bar. In a country where the justices of the supreme court only get a salary of $3,000 per annum, a fee of $1,000 for conducting a foreclosure suit involving $14,000 and one such question of law and two or three weeks work, at the outside, ought to be considered a liberal compensation. But the conclusion having been reached that the plaintiff is only entitled to recover as for an uncontested suit, it is not necessary to consider the matter in this light any further. Upon this point there is no conflict in the evidence. All the witnesses agree that for an uncontested foreclosure suit, 5 per centum upon the amount recovered is reasonable compensation for the services of the attorney. To ascertain what this amounts to, as there was no money collected on the decree, it became necessary to inquire into the value of the mortgaged property bid in by the defendant.

Upon this question the evidence is quite conflicting. It is given upon the assumption that the defendant acquired a good title to the property by the purchase at the sheriff's sale, and so it will be considered. The figures range from $25,000 to $10,000. From all the circumstances of the case, and the relation of the witnesses to the transaction and the subject of real property in this city, I am very certain that the minimum valuation is much nearer the mark than the maximum one. The property consists of four lots between Front and First and Jefferson and Madison streets. The improvement upon it is a one-story brick building about 40 feet wide and 200 feet long. It was built for a market house where there appears to be no demand for one. No one offered to bid upon the property at the sale, and it only brings in $50 per month rent. I have found the value of it to be $12,000, and my impression is that that sum is rather above than below its real

worth. Five per centum upon this sum is $600, which is the amount the plaintiff is entitled to recover, less the amount received by him from the defendant. The evidence upon the latter point is not satisfactory. But it appears from two receipts, given by the plaintiff to the clerk of the circuit court, that he received from the latter, out of the costs and expenses paid by the defendant in the foreclosure suit, the sum of $224.50 in currency. But the plaintiff shows by the receipt of the clerk of the supreme court that he had advanced $35.50 of this amount, and was entitled to receive it back. Besides this, I deduct $29 from these receipts, because I am not satisfied but that it was advanced by the plaintiff. This leaves $160 of the amount received by the plaintiff unaccounted for, which must be deducted from the sum due plaintiff for his services. Converting the $600 into currency gives $660, which sum, less the $160, is the amount for which the plaintiff is entitled to judgment, —$500.